```
1                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF VIRGINIA
2                         Roanoke Division

3   UNITED STATES OF AMERICA,      Criminal No. 7:15cr00016

4                   Plaintiff,

5           vs.                    Roanoke, Virginia

6   JOSHUA LINKOUS,

7                   Defendant.     June 30, 2015

8
                     TRANSCRIPT OF GUILTY PLEA HEARING
9            BEFORE THE HONORABLE MICHAEL F.  URBANSKI
                     UNITED STATES DISTRICT JUDGE
10
    APPEARANCES:
11
    For the United States:        ERIN KULPA
12                                 U.S. Attorney's Office
                                   255 W. Main St.  Room 130
13                                 Charlottesville, VA 22902

14  For the Defendant:            LARRY W. SHELTON
                                   Federal Public Defender
15                                 210 First St. SW
                                   Suite 400
16                                 Roanoke, VA 24011

17                                 BRIAN BECK
                                   Federal Public Defender Office
18                                 201 Abingdon Place
                                   Abingdon, VA 24211
19
    Court Reporter:               Sonia Ferris, RPR, OCR
20                                 U.S.  Court Reporter
                                   116 N.  Main St.   Room 314
21                                 Harrisonburg, VA 22802
                                   540.434.3181.   Ext.  7
22

23

24
    Proceedings recorded by mechanical stenography; transcript
25  produced by computer.
```

1          THE COURT:  Good afternoon.

2          Please call the case.

3          THE CLERK:  This is the United States of America

4    versus Joshua Linkous, Criminal Action 7:15cr16.

5          THE COURT:  Is the United States ready to proceed?

6          MS. KULPA:  We are, Your Honor.

7          THE COURT:  Is the defendant ready to proceed?

8          MR. SHELTON:  We are, Your Honor.

9          THE COURT:  It's my understanding we're here today to

10   conduct a Rule 11 guilty plea hearing.  It's expected the

11   defendant will plead guilty to certain charges in the

12   indictment, namely Counts 1, 6 and 8, pursuant to a written

13   plea agreement.

14         Mr. Linkous, before I can call upon you to plead, I

15   need to make sure you possess a sufficient understanding of

16   your situation so as to make a knowing, voluntary,

17   intelligent and informed plea.  In that regard, I'm going to

18   need to ask you certain questions and you must answer them

19   under oath.

20         During this proceeding, if there's some question

21   asked or statement made that you do not understand, I want

22   you to stop the proceeding, talk to your lawyer and let me

23   know there's something you don't understand.

24         Likewise, if there's something said at this hearing

25   that you don't agree with, I need you to talk to your lawyer.

```
 1    I need you to let me know that you don't agree with it.  If
 2    you don't speak up, I'm going to assume that you understand
 3    what's being said and that you agree with it.
 4          Are we clear on that?
 5          THE DEFENDANT:  Yes, sir.
 6          THE COURT:  Let's ask Mr. Shelton and Mr. Linkous to
 7    come forward to the podium.
 8          We're going to need the plea agreement, the
 9    indictment, the statement of facts, if there is one -- yes,
10    statement of facts.
11          Ask the clerk to administer the oath to the
12    defendant.
13          (Defendant sworn).
14          Mr. Linkous, do you understand now that you've been
15    sworn, you must answer all questions truthfully?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  And if you answer any question falsely,
18    your answers may later be used against you for a prosecution
19    for perjury or making a false statement.
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  Okay.
22          Now, I want to ask you some questions directed
23    generally to the issue of your competency.  The reason I'm
24    asking you these questions is obviously because this hearing
25    is important and I want to make sure that you're
```

1    clear-headed, alert and that you understand what's going on.

2          THE DEFENDANT: Yes, sir.

3          THE COURT:  Do you understand?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Tell me what your name is.

6          THE DEFENDANT:  Joshua Linkous.

7          THE COURT:  How old are you?

8          THE DEFENDANT:  39.

9          THE COURT:  39 years old.  Where are you from?

10         THE DEFENDANT:  Dublin, Virginia.

11         THE COURT:  Where were you born?

12         THE DEFENDANT:  Blacksburg, Virginia.

13         THE COURT:  So you're a U.S. citizen?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  How far did you go in school?

16         THE DEFENDANT:  I graduated high school.

17         THE COURT:  Where did you go to school?

18         THE DEFENDANT:  Christiansburg.

19         THE COURT:  Have you taken any school since high

20    school?

21         THE DEFENDANT:  No.

22         THE COURT:  Okay.  Speak English, obviously.

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Can you read and write in English?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Are you aware of any condition that you

2     have, hearing condition or otherwise, that might make it

3     difficult for you to understand what's going on here today in

4     open court?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Have you been treated for any sort of

7     emotional or mental problem that might impair your judgment,

8     interfere with your thinking, make it difficult for you to

9     understand what's going on here?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Have you been treated for any sort of

12     mental illness or problem of any kind?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Including anxiety, depression?  Anything

15     at all?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Have you ever been treated for addiction,

18     either to alcohol or any sort of narcotic drug?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Have you taken any substances -- drugs,

21     alcohol, prescription medicine -- anything at all in the last

22     day or so that might affect your ability to understand what's

23     going on here today?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Counsel, do you have an opinion with

1    regard to the competency of your client, Mr. Linkous?

2            MR. SHELTON:  I believe he's fully competent, Your

3    Honor.

4            THE COURT:  Do we have a copy of the indictment there

5    in front of him?

6            MR. SHELTON:  He does.

7            THE COURT:  Mr. Linkous, have you received a copy of

8    this indictment?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Counsel, what have you done to acquaint

11   your client with the charges against him set forth in this

12   indictment?

13           MR. SHELTON:  Your Honor, we've reviewed the charges

14   in the indictment on numerous occasions.  We've talked about

15   the elements contained within each count and we've discussed

16   the evidence, the discovery evidence that's been produced by

17   the government as to each count of the indictment.

18           THE COURT:  Based on your discussions with your

19   client about the charges, the elements, what his options are,

20   do you believe you're in a position to waive the formal

21   reading of the indictment or would you like to have it read

22   into the record?

23           MR. SHELTON:  We will waive it, Your Honor.

24           THE COURT:  Now, Mr. Linkous, have you received a

25   copy of the this indictment?

```
 1            THE DEFENDANT:  Yes, sir.

 2            THE COURT:  Have you read it?

 3            THE DEFENDANT:  Yes, sir.

 4            THE COURT:  Have you had a chance to fully discuss

 5   the charges against you with your lawyer?

 6            THE DEFENDANT:  Yes, sir.

 7            THE COURT:  Do you believe you understand what you're

 8   charged with in this indictment?

 9            THE DEFENDANT:  Yes, sir.

10            THE COURT:  Do you understand that the charges in

11   this indictment are felonies?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Do you understand that by pleading guilty

14   to three of those counts, Counts 1, 6 and 8, that means

15   you're agreeing that you did what's set forth in Counts 1, 6

16   and 8?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Now, we have a copy of the plea agreement

19   there, Mr. Shelton, in front of him?

20            MR. SHELTON:  Yes.

21            THE COURT:  I understand there's a written plea

22   agreement in this case.

23            Have you got it there in front of you, Mr. Linkous?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  Did you read this plea agreement?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did you go over its terms with your

3    lawyer?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Did you go over every page?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Did you initial every page, indicating

8    that you had read it?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Did you sign it at the end, indicating

11   that you agreed to it?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Did you have a chance to go over this

14   plea agreement with Mr. Shelton?  There's a lot of stuff in

15   here.  Did you have a chance to go over it with him, making

16   sure that you understand the terms of this plea agreement?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  Now, I want to ask the Assistant

19   United States Attorney to go over the essential terms of the

20   plea agreement.  I do this in every case.  I do this

21   deliberately.  I want you to hear out of the mouth of the

22   government what the government says this agreement means.

23   Thus, if there's something that doesn't sound right to you or

24   you don't agree with, it would be time to let me know.  Okay?

25         THE DEFENDANT:  Yes, sir.

1        THE COURT: Let's have counsel for the U.S. come

2   forward and go over the essential terms of the plea

3   agreement, please.

4        MS. KULPA:  Your Honor, did you want me to do this at

5   counsel table or approach the stand, Your Honor?

6        THE COURT:  You can stay there if it's all right --

7   Mr. Shelton, is that all right with you?

8        MR. SHELTON:  It is.

9        MS. KULPA:  Thank you, Your Honor.

10        Your Honor, under the terms of the plea agreement,

11   the defendant is agreeing to plead guilty to Counts 1, 6 and

12   8 of the indictment in exchange for a sentence of

13   imprisonment -- this is under Rule 11(c)(1)(C) -- of between

14   120 and 180 months. The defendant specifically agrees that a

15   sentence of imprisonment within this range is a reasonable

16   sentence for his conduct as charged in the indictment,

17   considering the facts and circumstances of the case.

18        He agrees that his attorney has informed him of the

19   nature of the charges and the elements of the charges that

20   must be proved by the United States beyond a reasonable

21   doubt.

22        He understands that Count 1 charges him with

23   aggravated sexual abuse by force against victim one, in

24   violation of 18 United States Code Section 2241(a).  The

25   maximum statutory penalty is a fine of $250,000 and/or a term

1  of imprisonment of up to life, plus a term of supervised

2  release for at least five years and up to life.

3        Count 6 charges the defendant with abuse of sexual

4  conduct of victim two, in violation of Title 18 United States

5  Code Section 2244(a)(1).  The maximum statutory penalty for

6  that offense is a fine of $250,000 and/or a term of

7  imprisonment for up to ten years, plus a term of supervised

8  release of at least five years and up to life.

9        Count 8 charges the defendant with abuse of sexual

10  contact of victim three, in violation of Title 18 United

11  States Code Section 2244(a)(1).  The maximum statutory

12  penalty is a fine of $250,000 and/or a term of imprisonment

13  of up to ten years, plus a term of supervised release of at

14  least five years and up to life in prison.

15        The defendant asserts he is, in fact, pleading guilty

16  as described under these counts because he is guilty and

17  because he believes it's in his best interests to do so and

18  not because of any threats or promises.

19        The defendant acknowledges that he has had all of his

20  rights explained to him and that he waives and gives up

21  several valuable constitutional rights, which are enumerated

22  in the agreement, which include the right to plead not guilty

23  and persist in that plea; the right to a speedy and public

24  jury trial; the right to confront and cross-examine witnesses

25  by the government; the right to present evidence and

1  witnesses on his own behalf; the right to be presumed

2  innocent; the right to appeal a guilty verdict, and other

3  rights enumerated within that agreement, Your Honor.

4      In addition, the defendant understands that if he

5  complies with his obligations under the plea agreement, the

6  United States will move, at sentencing, that he would be

7  dismissed as a defendant in the remaining counts of the

8  indictment and that we will not seek the imposition of a fine

9  as part of his punishment.

10      The defendant stipulates and agrees that the United

11  States had probable cause to bring all of the counts in the

12  indictment which would be dismissed and those charges were

13  not frivolous, vexatious or in bad faith.

14      Additionally, as to the sentencing provisions, Your

15  Honor, the defendant understands that under Federal Rule of

16  Criminal Procedure 11(c)(1)(C) that the term of imprisonment

17  would be a range between 120 months and 180 months and he

18  specifically stipulates to a term of supervised release of

19  15 years.  He waives any right to seek any future reduction

20  in sentence and he understands that the United States will

21  specifically be asking this Court to impose a sentence of

22  180 months and that he may argue for a sentence as low as,

23  but no lower than, 120 months, but within that range of

24  months is left to the Court's discretion; that he will not be

25  eligible for parole during any term of imprisonment that's

1    imposed.

2        THE COURT: There's another provision on page three

3    that you sort of skipped over and that's the last sentence in

4    paragraph (b)(1). Can you go over that, please?

5        MS. KULPA: The last paragraph --

6        THE COURT: The last sentence of paragraph (b)(1).

7        MS. KULPA: The last sentence is that the defendant

8    understands he will not be eligible for parole during any

9    term of imprisonment.

10        THE COURT: No, no, no, no. You misheard me. The

11    last sentence of the first paragraph of (b)(1).

12        MS. KULPA: I apologize, Your Honor.

13        THE COURT: No, maybe I said it wrong.

14        MS. KULPA: The defendant specifically waives any

15    right that he has to any future reduction in his sentence

16    based on a change in the Sentencing Guidelines.

17        THE COURT: In other words, Mr. Linkous, if the

18    United States Sentence Commission somewhere down in the

19    future decides they want to change the Sentencing Guidelines

20    for this offense, you waive any reduction, should the

21    Sentencing Commission ever decide to do that. And that is

22    because this is a plea based on an agreement and it is not

23    specifically based on the guidelines.

24        Do you understand that?

25        MR. SHELTON: Your Honor, may I explain?

1          THE COURT:  Yes.

2          (Counsel conferred with the defendant).

3          MR. SHELTON:  We discussed that, Your Honor.  I

4    wanted to be sure he understood what I advised him earlier.

5          THE COURT:  You understand that, Mr. Linkous?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  I'm not aware of the Sentencing

8    Commission ever reducing the guidelines for this kind of

9    offense, but they have done it recently for drug offenses and

10   so this issue has come up in connection with that.  I'm not

11   aware of the Sentencing Commission ever lowering the

12   guidelines for this nature of offense.  But in any event,

13   because this is a (c) plea, a plea under Rule 11(c)(1)(C),

14   it's based on the agreement between you and the United States

15   and not expressly based on the guidelines, you would not be

16   eligible should the guidelines be reduced in the future.

17         Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Go ahead.

20         MS.  KULPA:  Thank you, Your Honor, for drawing my

21   attention to the provision.

22         Your Honor, under the Sentencing Guidelines which

23   will be calculated in the defendant's case, the defendant

24   agrees to the specific base guideline sections applicable to

25   his conduct, specifically for Count 1, Count 6 and Count 8.

1    And he further understands that the United States will argue

2    that there are certain enhancements that are applicable under

3    the Sentencing Guidelines and that those specific provisions

4    relate to the use of force, abduction and restraint of the

5    victim and that that will be part of our argument

6    specifically in asking the Court to impose a sentence of

7    180 months; and that the defendant is free to argue that

8    those enhancements and provisions would not be applicable.

9         The defendant also specifically agrees to accept

10   responsibility for his conduct as charged in the indictment.

11        Your Honor, under restitution, the defendant agrees

12   to pay restitution for the entire scope of his criminal

13   conduct, including but not limited to all matters included as

14   relevant conduct, and he agrees to pay any restitution

15   required by law, including but not limited to amounts due

16   pursuant to Title 18 United States Code 2259, 3663 and

17   3663(a), and he will pay restitution for the above-stated

18   matters imposed as part of the final judgment in this matter.

19   We have agreed with the defendant that the exact amount of

20   restitution would be calculated as part of the pre-sentence

21   report and that we can argue about that amount at sentencing,

22   Your Honor.

23        THE COURT:  As I understand it, since restitution is

24   based on -- you said it's based on the offenses to which he's

25   pleading guilty, but also relevant conduct.  So the

1   restitution, as I understand it, would apply to all victims

2   and not simply just the victims set forth in the statement of

3   facts.

4          Is that correct?

5          MS. KULPA:  That is correct, Your Honor. We would be

6   seeking restitution for all matters related to the course of

7   his criminal conduct.

8          THE COURT:  You understand that, Mr. Linkous? Have

9   you gone over that with your lawyer?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  In other words, this statement of facts

12  deals with victim one, victim two and victim three, but I

13  understand there may be more victims than that and that you

14  would, as part of this plea agreement and part of the

15  sentence in this case, be required to pay restitution to all

16  victims.

17         Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         MR. SHELTON:  Your Honor, he also has been advised by

20  me that he, obviously, as the government has indicated, will

21  challenge specific amounts and we reserve the right to do

22  that.

23         THE COURT:  Probation will put that in part of the

24  investigation of the pre-sentence report. The Court will

25  determine that at sentencing. There are provisions of the

1   Code that allow the Court to take additional time for

2   restitution, I think up to 90 days set forth in the Code, if

3   the Court needs additional time for restitution.

4           Go ahead.

5           MS. KULPA:   Thank you, Your Honor.

6           Moving further into the agreement, the defendant

7   acknowledges that as part of his sentence, he has a duty to

8   make certain financial disclosures and there are certain

9   collection matters that are relevant to the imposition of

10  restitution and for any court fees that are associated with

11  his criminal conduct.

12          He also acknowledges that he waives his right to

13  appeal as to any and all other issues in this matter and he

14  will not file a notice of appeal, with the proviso that he

15  understands that there are certain matters that cannot be

16  waived by law and that he could file a notice of appeal on

17  those specific matters.

18          As to collateral attacks, Your Honor, the defendant

19  waives his right to collaterally attack by any court pleading

20  this guilty plea and the sentence in this case except for

21  those things that are specifically reserved by law, including

22  a collateral attack based on ineffective assistance of

23  counsel.

24          The defendant understands that there are certain

25  conditions of supervised release that are attendant in cases

such as this. He specifically agrees to a period of at least

15 years of supervised release after his term of

incarceration and that there will be certain special

conditions of supervised release that are in addition to the

standard conditions that relate to the nature of the offenses

in this case, specifically the sexual assaults against

multiple victims, and that those additional obligations will

be imposed by the Court.

        The defendant also acknowledges that under the terms

of this plea agreement and based on the fact that he is

pleading guilty to Count 1 of the indictment that he will be

registering as a Tier 3 sex offender for the rest of his life

pursuant to the Sex Offender Registration and Notification

Act and that that has specific obligations that are

statutorily imposed and it includes notifying and keeping a

registration current in multiple locations, including the

location of his residence, location of his employment and if

he's a student upon release, the school of any school he's

attending.

        THE COURT:  Look, Mr. Linkous, you need to

understand. This plea agreement and the result of it has a

number of components.  One -- and you're probably thinking

about this. You're probably thinking about this agreement

under Rule 11(c)(1)(C) to go between 120 months and

180 months. That's 10 to 15 years. That's probably first and

1   foremost in your mind. There's also a possibility of a fine

2   in this case. I'll go over it. There is the likelihood in the

3   agreement to provide restitution to the victims, whatever the

4   Court orders with regard to restitution. There is a period of

5   supervised release that you're agreeing to of at least

6   15 years in which you'll be under supervision by the Court.

7          This is the point I want to make here. Associated

8   with the supervised release, there are very strict terms and

9   conditions as to what you can and what you cannot do. They

10  are set forth in the Court's standard order and they are very

11  rigid; places you can go, things you can do, things you

12  cannot do.

13         Then on top of that, after you're done with your

14  period of supervised release, you will be, for the rest of

15  your life, required to register as a Tier 2 (sic) sex

16  offender and that has certain obligations with it and if you

17  skip out and don't follow those obligations, it's a violation

18  of federal law. You can be subject to the Marshal bringing

19  you back in here and subject to additional penalties,

20  including additional jail time.  So there's a number of

21  things that go along with this guilty plea.

22         Do you understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Okay.

25         Go ahead, Ms. Kulpa.

1   MS. KULPA: Your Honor, that would be a Tier 3

2   registration, which would be mandated by the plea to Count 1.

3   THE COURT: Right.

4   MS. KULPA: Additionally, Your Honor, the defendant

5   has specifically stated that he understands that any

6   statements that he makes during or in preparation for this

7   guilty plea hearing, sentencing hearing or other hearing, and

8   any statements that he has made to law enforcement or makes

9   to law enforcement in any setting, including during a

10  proffer, may be used against him in this or any other

11  proceeding; and that he knowingly waives any right he may

12  have under the constitution, any statute, rule or other

13  source of law to have those statements or evidence derived

14  from those statements suppressed or excluded from being

15  admitted into evidence and stipulates that such statements

16  can be admitted into evidence.

17  The defendant has certain additional obligations

18  under the plea agreement in that he agrees not to commit

19  certain enumerated acts, including attempting to withdraw his

20  guilty plea, unless the Court were to reject the plea

21  agreement; denying he committed any of the crimes to which he

22  has pled guilty; failing to comply with any provisions of

23  this plea agreement; making a false statement; failing to

24  enter his plea of guilty when scheduled to do so; failing to

25  testify truthfully as to any matter if called upon to do so

1    at his sentencing hearing or other proceeding; failing to

2    cooperate with law enforcement agents, and there are other

3    specific obligations he has agreed to within this plea

4    agreement.

5           He also understands that if he were to violate any of

6    those enumerated conditions of this plea agreement, he

7    understands the United States Attorney's Office may, at its

8    election, pursue several listed remedies for his failing to

9    comply with the provisions of the agreement.

10          Your Honor, the defendant acknowledged that his

11   signature on this agreement constituted a binding offer by

12   him to enter into the agreement and the United States, by

13   signing it, has similarly agreed to enter into this binding

14   offer.

15          The defendant acknowledged that he has discussed the

16   terms of this plea agreement and all matters pertaining to

17   the terms, with his attorney, and he is fully satisfied with

18   his attorney and his attorney's advice and that at this time,

19   he has no dissatisfaction or complaint with his attorney's

20   representation and that he he will make known to the Court no

21   later than at the time of the sentencing any dissatisfaction

22   or complaint he may have with his attorney's representation.

23          Your Honor, that is the sum of the plea agreement and

24   I apologize, Your Honor, for not stating specifically, but

25   thank you for allowing me to remain at counsel table.  I do

have a brace on my leg that makes me a little bit slower

moving around the courtroom.

THE COURT: Thank you, Ms. Kulpa.

Mr. Shelton, are the matters that were just discussed

consistent with your understanding of the essential terms of

the plea agreement?

MR. SHELTON: They are, Your Honor.

THE COURT: Mr. Linkous, is that summary consistent

with your understanding as well?

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe you understand the terms

of the plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions that you want

to ask the Court about the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Do you agree to the terms of the plea

agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want the Court to accept the plea

agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody attempted to force you,

pressure you, threaten you, coerce you, make you plead guilty

to these charges?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Are you pleading guilty of your own free

3    will?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, has anybody made you any promises or

6    assurances separate and apart from the terms of this written

7    plea agreement?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Does the plea agreement represent in its

10    entirety your whole agreement with the United States?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Now, in addition to the penalties that

13    have been gone over that are set forth in the plea agreement

14    for these charges, the offenses to which you're pleading

15    guilty are federal felonies and along with that can result in

16    a deprivation of some civil rights, including the right to

17    vote, serve on a jury, possess any kind of firearm, hold

18    public office.

19          Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Count 1 that you're pleading guilty to is

22    aggravated sexual abuse by force. Count 6 is abuse of sexual

23    conduct against one victim. Count 8 is abuse of sexual

24    contact against another victim.

25          For Count 1, the government is required to prove the

1 following elements:  It must prove the defendant knowingly

2 caused another to engage in a sexual act by using force

3 against that person and that the act occurred in a special

4 territorial jurisdiction of the United States.

5    Do you understand the elements of Count 1?

6    THE DEFENDANT:  Yes, sir.

7    THE COURT:  Counts 6 and 8, the government would have

8 to prove the defendant knowingly engaged in sexual contact

9 with another person and did so by using force against that

10 other person and that contact occurred in the special

11 territorial jurisdiction of the United States.

12    Do you understand that?

13    THE DEFENDANT:  Yes, sir.

14    THE COURT:  And the elements of those offenses?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  As to Count 1, the maximum possible

17 penalty is a fine of up to $250,000, a period of

18 incarceration of up to life in prison.

19    As to Counts 6 and 8, the maximum possible penalty is

20 a fine up to $250,000 and a period of incarceration of ten

21 years for each of those crimes. The period of supervised

22 release is at least five years and up to life.

23    There is -- the United States has talked about

24 restitution.

25    I assume there's no forfeiture in connection with

1  this?

2        MS. KULPA:  There is not, Your Honor.

3        THE COURT:  And there's a mandatory special

4  assessment of $100 per count.

5        So the key aspects of the penalties are a period of

6  incarceration, that I've gone over; a fine up to $250,000 per

7  charge; a period of supervised release of at least five

8  years; restitution; mandatory special assessment.

9        Again, on this supervised release, it will have very

10  stringent terms and conditions associated with it, associated

11  with Tier 3 sex offender. I just want to make sure that you

12  understand those terms and conditions are rather rigorous.

13        Do you understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you have any questions about any of

16  these penalties?

17        THE DEFENDANT:  No, sir.

18        THE COURT:  Have you gone over all these penalties

19  with your lawyer?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  Let me preview for you the procedure by

22  which I'm going to determine the sentence in this case.

23        I'm going to send this matter to probation. Probation

24  is going to create a pre-sentence report. You'll get a copy

25  of it. You and your lawyer can make any necessary corrections

1  or voice any objections to it. The government can do so as

2  well. I will deal with those objections.  If they don't get

3  resolved by agreement, I will deal with those at sentencing

4  and make whatever findings are appropriate with regard to the

5  objections to the pre-sentence report.

6         Now, I am not going to accept this plea agreement

7  today. I never accept Rule 11(c)(1)(C) plea agreements at the

8  guilty plea, okay? That's because I don't know enough about

9  you to know whether or not this sentence is consistent with

10 the factors that I'm required to consider when I'm imposing a

11 sentence.

12        I'm required to consider the factors under 18 United

13 States Code Section 3553(a). Those factors include the nature

14 and circumstance of the offense; your history and

15 characteristics; and more generalized factors such as the

16 need for the sentence imposed to promote respect for the law;

17 provide just punishment; afford adequate deterrence; protect

18 the public; provide necessary rehabilitation, and other such

19 matters.  In other words, I don't know enough right now to

20 know whether or not this agreed upon sentence is consistent

21 with my view of what is appropriate in this case. So, I'm

22 going to send the matter to probation. We'll get a

23 pre-sentence report. I'll get your lawyer and the government

24 to file sentencing memoranda and I will decide at sentencing

25 whether I'm going to accept this plea agreement or not.

1          Now, under Rule 11(c)(1)(C) of the Federal Rules of

2     Criminal Procedure, if I accept this plea agreement, then I

3     am required to sentence you to a period of between 10 years

4     and 15 years in federal prison, okay? And I am also required

5     to impose a term of supervised release of at least 15 years.

6          I think y'all specified 15; right?

7          15 years. And it would require these Tier 3 sex

8     offender conditions associated with it.

9          I would also be required to impose restitution to the

10    victims, along with $300 mandatory special assessment.

11         Now, if I decide at sentencing that I believe this

12    sentence is consistent with the law, after getting the

13    pre-sentence report, hearing whatever evidence that's going

14    to be presented, then I'll accept the plea agreement. If I

15    decide it's consistent with the facts and the law, then I'll

16    accept the plea agreement and I'll be required then to

17    sentence you in that range. If I decide it's not, if I

18    decide, for whatever reason, that range is too high or too

19    low, then I will reject the plea agreement and you will be --

20    at that point, you'll be able to plead not guilty and go to

21    trial. Or you can plead guilty without a plea agreement,

22    understanding that if you do so, the Court can sentence you

23    up to the statutory maximum, which is, in this case, for

24    Count 1, life in prison.

25         Do you understand that?

1      THE DEFENDANT:  Yes, sir.

2      THE COURT: And I'm not just doing that in this case.

3  I do that in every case in which I have a Rule 11(c)(1)(C)

4  plea. I want to see what the Advisory Sentencing Guideline

5  calculations are. I want to see what probation says. I want

6  to see what the parties say about the fairness of this

7  proposed plea.  I want to consider it in connection with the

8  Rule 3553(a) factors and then I'll decide whether to accept

9  it or not.  Okay?  If I believe it's fair and just,

10  consistent with the facts and the law, then I'll accept it.

11  If I have an issue with it or a concern, I'll let you know

12  what that is and I'll let you know whether -- that I'm not

13  accepting it. And if I don't accept it, you'll have a right

14  to withdraw your plea.

15      Do you understand all those things?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  Do you understand how a Rule 11(c)(1)(C)

18  works?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  Do you have any questions about that at

21  all?

22      THE DEFENDANT:  No, sir.

23      THE COURT:  You've been over all this with your

24  lawyer?

25      THE DEFENDANT:  Yes, sir.

1        THE COURT:  Now, you guys have agreed in this plea

2   agreement on page four as to some guideline stipulations;

3   base offense level of 30 for Count 1 and a base offense level

4   of 20 for Count 6 and 8. I'll accept those guideline

5   stipulations if I believe they're consistent with the law and

6   the facts. I'm not accepting them now.  I want to wait and

7   see what the pre-sentence report says.  If I don't believe

8   these stipulations are consistent with the law and the facts,

9   then I'm not bound by them. I do not have to accept them. I

10  can make my own guidelines findings.

11       Now, parole is abolished. There's no parole in the

12  federal system. If you are sentenced to this period of

13  incarceration or whatever period of incarceration, you will

14  serve the entire time. There's no board you can apply to

15  early to get out.

16       Do you understand that?

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  Now, I talked about supervised release.

19  Supervised release is a period when you're under the

20  supervision of the Court, after you get out of prison.  As I

21  told you about three times now, this period of supervised

22  release will have rigid Tier 3 sex offender conditions on it

23  that will severely limit your freedom as to where you can go

24  and what you can do. Folks don't like them. I can tell you.

25  Folks don't like these conditions, but they'll be imposed

1    upon you if the Court accepts this plea.

2            Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Because they limit where you can go.

5    They can limit your contact with children and other folks.

6    You have to report where you're living and folks don't like

7    it, but you will be subject to it.

8            Do you understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Now, let's talk about the rights you're

11   giving up on -- by pleading guilty to this -- these three

12   counts. You're giving up three things. First, you're giving

13   up your right to a jury trial. You're giving up your right to

14   require the government to put 12 folks in that jury box and

15   prove its case against you beyond a reasonable doubt.

16           You don't have to prove anything. You are presumed

17   innocent. You may sit at counsel table and remain silent and

18   not have that silence used against you.

19           Under the Sixth Amendment of the Constitution, you'd

20   have the right to Mr. Shelton, to have the effective

21   assistance of counsel with you here at trial to represent

22   you.

23           Under the Fifth Amendment of the Constitution, you'd

24   have the right to see, hear and confront the government's

25   evidence. You'd have the right to use the power of the Court

1    by way of subpoena to bring documents and persons and things

2    here to assist in your defense. But by pleading guilty, you

3    are waiving your right to trial and there will be no trial.

4            Do you understand?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Second thing you waive is your right to

7    appeal. You give up your right to appeal except for a matter

8    that cannot be waived by law. Well, what does that mean? That

9    means you're not waiving -- if the Court were to sentence you

10   based on a constitutionally impermissible factor such as age

11   or sex or race or something like that, you're not waiving

12   that. You're also not waiving your right to appeal if I

13   sentence you beyond what the law allows. But the fact of the

14   matter is, in this case, the law allows a sentence of up to

15   life in prison. So except for those narrow circumstances, you

16   are giving up your right to appeal and to correct any error

17   that I may make in this case.

18           Third thing you give up is your right to collaterally

19   attack the judgment. Well, what does that mean? That means

20   you give up your right to file a habeas corpus petition, a

21   petition to ask the Court to release your body from prison

22   for some sort of error or constitutional problem with the

23   judgment. You give that up except for any claim of

24   ineffective assistance of counsel.

25           So, you give up your right to trial in its entirety

1    and except in very narrow circumstances, your right to appeal

2    and your right to collaterally attack the judgment by filing

3    a habeas corpus petition.

4            Do you understand those rights you're giving up by

5    pleading guilty pursuant to this written plea agreement?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Understanding those rights, you still

8    want to go forward with this plea agreement?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  All right.

11           Are you fully satisfied with the advice and

12   representation provided by Mr. Shelton, your counsel, in this

13   case?

14           THE DEFENDANT:  Yes, sir.

15           MR. SHELTON:  Your Honor, Mr. Beck, as well. He has

16   co-counsel.

17           THE COURT:  Mr. Beck, nice to see you. Sorry.

18           Are you fully satisfied with both of those counsel?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  And the advice they've given you and

21   representation?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Is there anything you want to ask me

24   about?  Anything that we've gone over that you have any

25   question about it? Anything we've gone over that you disagree

1   with? Anything you want to ask me about before we continue?

2         THE DEFENDANT:  No, sir.

3         THE COURT:  Ask the United States to present the

4   facts it would be prepared to prove were this case to go to

5   trial.

6         MS. KULPA:  Your Honor, the defendant has signed a

7   written statement of facts in this case and I will go over

8   that statement of facts.

9         The defendant was an employee at the Radford Army

10  Ammunition Plant, which is colloquially referred to as the

11  Arsenal, from approximately January 2001 until August 2014

12  when he was terminated. During part of that time, he worked

13  in an area of the Arsenal known as the "Tub House," which is

14  within the Nitrocellulose Area.   The Arsenal, Your Honor, is

15  a facility that manufactures components for military use.

16        Victims one, two and three, identified in the

17  indictment -- identified as such in the indictment, whose

18  true identities are known to the grand jury and to the

19  defendant, also worked in this same Nitrocellulose Area, and

20  some of them specifically worked in the Tub House.

21        On July 27, 2014, the defendant coaxed victim one

22  into the Tub House.   No one else was working in the Tub

23  House at that time.   As victim one was standing near the

24  lockers in the Tub House, the defendant grabbed her and

25  pushed her into a small secluded room referred to as the

1   "break room." The lights were off and he locked the door.

2   The defendant pushed victim one up against a kitchen counter

3   in the break room, pinning her back against that counter.

4   He forcibly unbuttoned her coveralls, which is the protective

5   clothing employees wear while working at the Arsenal, while

6   she tried to prevent him from doing so. Victim one was crying

7   and told the defendant to stop. He then forcibly turned her

8   around and pinned her stomach against the counter, with his

9   body behind her. The defendant got inside her clothing,

10  touched her bare breasts and penetrated her labia with his

11  finger, over her objection and against her will.

12          In June, 2014, the defendant found victim two at her

13  locker near the break room in the Tub House. Victim two began

14  to exit the Tub House, but as she neared the exit, the

15  defendant grabbed her by the upper arm and dragged her into a

16  room on the side of the Tub House where electrical circuit

17  breakers are housed, which is referred to as the "breaker

18  room." He closed the door and turned off the lights. The

19  defendant pushed her against a control panel and pinned her

20  down with his body. He forcibly kissed her, unbuttoned her

21  coverall clothing and kissed her breasts, against her will.

22  The defendant put his hands inside of her coveralls and

23  touched her vaginal area, over her underwear, with his hand,

24  against her will.

25          Sometime between August 2010 and December 2011, the

1  defendant approached victim three, who had worked in a
2  building near the Tub House. He put his hand inside her
3  coveralls near her vaginal area and then the defendant asked
4  her to go to the break room in the Tub House with him.
5  Victim three said no and he removed his hand from her
6  coveralls.  The victim then -- I'm sorry. The defendant then
7  followed her as she tried to walk away and he forcibly put
8  his hands inside her coveralls and under her underwear,
9  against her will. The defendant stopped when a co-worker
10 approached the area of the building where they were located.
11         The defendant specifically acknowledged that he had
12 reviewed these statement of facts in writing with his
13 attorney and that it is true and accurate and agrees that if
14 the matter had proceeded to trial, the United States would
15 have proven those facts that were outlined in writing beyond
16 a reasonable doubt.
17         THE COURT:  Mr. Shelton, is there any dispute about
18 the facts just presented?
19         MR. SHELTON:  None, Your Honor.
20         THE COURT:  Mr. Linkous, you've heard a summary of
21 the evidence against you. Did you hear anything in that
22 summary with which you disagree?
23         THE DEFENDANT:  No, sir.
24         THE COURT:  Did you go over this written statement of
25 facts with your lawyer?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did you have a chance to review it?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you agree that you did what is set

5     forth in this written statement of facts?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  I'm sorry?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And you had a chance to go over it with

10    your lawyer. You signed it, agreeing that had this case gone

11    to trial, the United States could have proven these facts

12    against you beyond a reasonable doubt.

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Okay. Are you, in fact, guilty of what is

15    charged in Counts 1, 6 of and 8 of this indictment?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Are you pleading guilty of your own free

18    will?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Counsel, based on your investigation of

21    the facts of this case, your understanding of your client,

22    your many discussions with him and your long representation

23    of him, do you believe that his plea of guilty pursuant to

24    this written plea agreement under Rule 11(c)(1)(C) is

25    consistent with the facts and the law and in your client's

```
 1    best interests?
 2            MR. SHELTON:  I do, Your Honor.
 3            THE COURT:  As to Count 1 of the indictment and
 4    pursuant to the written plea agreement, how do you plead?
 5            THE DEFENDANT:  Guilty.
 6            THE COURT:  As to Count 6 of the indictment and
 7    pursuant to the written plea agreement, how do you plead?
 8            THE DEFENDANT:  Guilty.
 9            THE COURT:  And as to Count 8 of the indictment and
10    pursuant to the written plea agreement, how do you plead?
11            THE DEFENDANT:  Guilty.
12            THE COURT:  Listen to the clerk while she reads you
13    the written guilty plea form.
14            (Guilty plea form read and executed).
15            THE CLERK:  The form has been executed.
16            THE COURT:  It's the finding of the Court in the case
17    of the United States vs. Joshua Linkous that the defendant is
18    fully competent and capable of entering an informed plea.
19    He's aware of the nature of the charges and the consequences
20    of his plea.  His plea of guilty is knowing, voluntary,
21    intelligent and supported by an independent basis in fact as
22    to each of the essential elements of the three offenses.
23            As I indicated, as I do with all Rule 11(c)(1)(C)
24    pleas, I'm taking it under advisement pending receipt of the
25    pre-sentence report and a sentencing hearing in this case.
```

1          I refer the matter to probation for the creation of a

2    pre-sentence report.

3          You'll get a chance to read it, make any necessary

4    corrections or objections.

5          I always ask counsel to give me a sentencing memo a

6    week before sentencing to inform the Court's judgment.

7          Do we have a date set for sentencing?

8          THE CLERK:  No, sir.  We're going to work on that.

9          THE COURT: He is in custody and I assume he's going

10   to remain there.

11         MR. SHELTON:  Unless the government agrees to a bond,

12   he will.

13         MS. KULPA:  We do not, Your Honor.

14         THE COURT:  If you want to move for a bond at some

15   point in the future, you can do that. You would have to, of

16   course, show exceptional circumstances under the Code for any

17   bond in this case and I'm not aware of any that -- given the

18   nature of this charge, I'm not aware of any exceptional

19   circumstances that would be applicable. But if you want to

20   move, understanding the standard, you can do so at a later

21   date.

22         MR. SHELTON:  Yes, Your Honor.

23         THE COURT:  I think the Code, in fact, under 18

24   United States Code 3145(c), says bond is only appropriate if

25   it is clearly shown there are exceptional reasons why such

1   person's detention would not be appropriate.

2          I understand the magistrate judge detained him.

3          MR. SHELTON:  He did.

4          THE COURT:  Was there a bond hearing?

5          MR. SHELTON:  There was.

6          THE COURT:  You sought bond at that time.

7          MR. SHELTON:  We did.

8          THE COURT:  The standard, of course, as you know, is

9   even harder now.

10         MR. SHELTON:  I know.

11         THE COURT:  Of course, you'll get credit, Mr.

12  Linkous, for every day you're serving now.

13         Anything further from the United States?

14         MS. KULPA:  No, Your Honor.

15         THE COURT:  Anything further from you, Mr. Shelton?

16         MR. SHELTON:  No, Your Honor.

17         THE COURT:  Or you, Mr. Beck?

18         MR. BECK:  No, Your Honor.

19         THE COURT:  Mr. Linkous, do you have any questions

20  you want to ask the Court at this time?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Remand him to custody.

23         We'll agree on a sentencing date.

24         If there's nothing further, ask the Marshal to

25  declare a recess.

1          (Proceedings adjourned at 1:01 p.m. )

2

3

4

5    "I certify that the foregoing is a correct transcript from

6    the record of proceedings in the above-entitled matter.

7

8

9    /s/ Sonia Ferris                    October 5, 2015"

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25